CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com

Attorney for Plaintiff:
Eve Nevada, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Eve Nevada, LLC,<br><br>　　　　　　Plaintiff,<br>　vs.<br>DOES 1-19<br>　　　　　　Defendants. | **Case No.: 1:20-cv-435-DKW-WRP**<br>(Copyright)<br><br>**FIRST AMENDED COMPLAINT; EXHIBIT 1**<br><br>**(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(2) DIRECT COPYRIGHT INFRINGEMENT**<br>**(3) DMCA VIOLATIONS** |

**FIRST AMENDED COMPLAINT**

Plaintiff Eve Nevada, LLC ("Plaintiff") files this First Amended Complaint against Defendants DOES 1-19 ("Defendants") and alleges as follows:

**I.     NATURE OF THE ACTION**

1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

20-032A

2. The Plaintiff alleges that Defendants are liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1202.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents resides or may be found in this District.

## III. PARTIES

### A. The Plaintiff

6. The Plaintiff Eve Nevada, LLC is a limited liability company registered under the laws of the State of Nevada, has principal offices in Los Angeles, California and is an affiliate of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.

7. Plaintiff is the owner of the 2020 action motion picture *Ava* ("Work") featuring Jessica Chastain, Colin Farrell, John Malkovich and Common. The Work tells the story a deadly assassin, traveling the globe specializing in high profile hits who is forced to fight for her own survival when a job goes wrong.

## B.   The Defendants

8. The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case for *Ava* is: SHA1: SHA1: D1B9C2C7649EF7607265F93A56E866A06CC648E4. The file name is "Ava (2020) [1080p] [WEBRip] [5.1] [YTS.MX]". Exhibit "1".

9. Upon information and believe, each of the Defendants received from Plaintiff's agent at least a first notice styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

10. The Internet Service Provider ("ISP") provides the Internet service for

Defendants.  Plaintiff intends to subpoena the ISP in order to learn the subscriber identities of Defendants.  Further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state the same.  Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants.  Plaintiff will amend this First Amended Complaint to include the proper names and capacities once determined.  Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this First Amended Complaint and damages resulting therefrom.

11. Upon information and belief and as explained more fully below, each of the Defendants used a website referred to as YTS ("YTS website") to obtain as torrent file for infringing the Work.

### IV.   JOINDER

12. Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringements of its Work complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are

common questions of law and fact.

13. Moreover, the infringements of the Work complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Work, and, upon information and belief, was accomplished by the Defendants acting in concert with each other.

## V. FACTUAL BACKGROUND

### A. *The Plaintiff Own the Copyrights to the Work Infringed by Defendants*

14. The Plaintiff is the owner of the copyright registrations for the screenplay (PAu003943693) and the motion picture (PA0002235557) in the Work. This action is brought pursuant to 17 U.S.C. § 411.

15. The Work is a motion picture currently offered for sale in commerce.

16. Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

17. Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, which bore a proper copyright notice.

### B. *Defendants Used the YTS Website to Download Torrent Files for Copying Plaintiff's Work.*

18. Upon information and belief, each of the Defendants registered for an

account on the YTS website using an email address or installed a BitTorrent Client application on their device that retrieved torrent files from the YTS website.

19. The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

20. The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiff's Work.

21. As shown by the screenshots below, the YTS website is known for distributing torrent files of copyright protected motion pictures.



6

20-032A



22. Upon information and belief, Defendants used the YTS website to download a torrent file associated with Plaintiff's motion picture.

23. The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage. Upon information and belief, this warning has appeared on the YTS website since 2018.

### C. Defendants Used BitTorrent To Infringe the Plaintiff's Copyrights.

24. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts

of data.

25. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants installed a BitTorrent Client onto his or her Computer.

26. A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

27. Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

28. Each of the Defendants installed a BitTorrent Client onto his or her computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

29. A BitTorrent user that wants to upload a new file, known as an "initial

seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

30. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

31. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

32. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

33. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

34. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

20-032A

35. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

36. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

37. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the website YTS.

38. Defendants went to torrent sites including the website YTS to upload and download Plaintiff's copyrighted Works.

### 4. The Peer Identification

39. The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

40. Upon information and belief, each Defendant was assigned a Peer ID by their BitTorrent client.

### 5. Uploading and Downloading a Work Through a BitTorrent Swarm

41. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

42. The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

43. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

44. In this way, all of the peers and seeders are working together in what is called a "swarm."

45. Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

46. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to

the other peers in the same swarm.

47. Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

***6. The Plaintiff's Computer Investigator Identified Defendants' IP Addresses as Participants in a Swarm That Was Distributing Plaintiff's Copyrighted Work.***

48. The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

49. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

50. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

51. The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibit 1 accurately reflect what is contained in the evidence logs.

20-032A

52. The logged information in Exhibit 1 show that Defendants copied pieces of the Plaintiff's copyrighted Works identified by the Unique Hash Number.

53. The Defendants' computers used the identified IP addresses in Exhibit 1 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

54. MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

55. MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### D. Defendants Knew the Copyright Management Information Included in the Files They Distributed had been Removed or Altered Without the Authority of Plaintiff

56. A legitimate file copy of the Work includes copyright management information ("CMI") indicating the title.

57. The initial seeder of the infringing file copies of Plaintiff's Work added the word "YTS" to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to the YTS website.

20-032A

58. The word YTS is not included in the file title of legitimate copies or streams of the Plaintiff's Work. The initial seeder of the Work altered the title to falsely include the word "YTS" as CMI.

59. The file copies Defendants distributed to other peers in the Swarm included this altered CMI in the file title.

60. Defendants knew that the YTS website from which they obtained their torrent files was distributing illegal copies of the Works.

61. Defendants knew that YTS was not the author of Plaintiff's Work.

62. Defendants knew that YTS was not a licensed distributor of Plaintiff's Works. Indeed, the YTS website includes a warning to this effect.

63. Defendants knew that the CMI that included YTS in the file names was false.

64. Defendants knew that the file copies of the Work that they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

65. Defendants knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

66. Defendants knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Work when they distributed the false CMI, altered CMI, or Works including the false or altered CMI.

67. Namely, Defendants knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtain unlicensed copies of the Work.

68. By providing the website title YTS in the altered CMI to others, Defendants induced, enabled and facilitated further infringements of the Work.

### VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

69. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

70. Plaintiff is the registered copyright owner of the Work which contains an original work of authorship.

71. Defendants copied the constituent elements of the Works.

72. Defendants also publicly performed and displayed the copyright protected Work.

73. By participating in the BitTorrent swarms with others, Defendants distributed at least a piece of the copyright protected Work to others.

74. Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute, publicly perform, or display the Work.

75. As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1)

20-032A

and 501.

76. As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

77. As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to perform the Work publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

78. Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

79. The Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyrights.

### VIII. SECOND CLAIM FOR RELIEF
**(Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)**

80. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

81. By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of others.

82. Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct

20-032A

of others.

83.     Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.  Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

84.     The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

85.     By engaging in the contributory infringement alleged in this First Amended Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when the respective film was offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of licensed distribution outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

## VIII. THIRD CLAIM FOR RELIEF

### (Digital Millennium Copyright Act Violations)

86.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

17

87. Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

88. Defendants, without the authority of Plaintiff, or the law, distributed, removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of Plaintiff and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work in violation of 17 U.S.C. § 1202(b)(2).

89. Defendants, without the authority of Plaintiff, or the law, distributed Plaintiff's Copyright protected Work knowing that the CMI had been removed or altered to include the wording "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

90. Particularly, the Defendants knew that the CMI in the file names of the pieces had been altered to include the wording "YTS".

91. Particularly, the Defendants distributed the file names that included CMI that had been altered to include the wording "YTS".

92. Defendants knew that the wording "YTS" originated from the notorious movie piracy website for which each had registered accounts and/or actively used.

93. Defendants' acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

94. Plaintiff is entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

95. Plaintiff is entitled to recover from Defendants the actual damages suffered by Plaintiff and any profits Defendants have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Plaintiff is currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

96. Plaintiff is entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

97. Plaintiff is further entitled to costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter preliminary and permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which he or she used to infringe Plaintiff's Work immediately cease said service;

(C) award the Plaintiff actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages of $150,000 for infringing the copyright in the screenplay and $150,000 for infringing the copyright in the motion picture pursuant to 17 U.S.C. § 504(a) and § 504(c);

(D) award the Plaintiff its actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiff's election, for maximum statutory damages of $25,000 pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, October 20, 2020.

                CULPEPPER IP, LLLC

                /s/ Kerry S. Culpepper
                Kerry S. Culpepper
                Attorney for Plaintiff

20-032A